**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **WEICHSEL FARM LIMITED,** | § | |
| **PARTNERSHIP,** | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:09-CV-00672-L** |
| | § | |
| **JPMORGAN CHASE BANK, NATIONAL** | § | |
| **ASSOCIATION, SUCCESSOR-IN-** | § | |
| **INTEREST TO WASHINGTON,** | § | |
| **MUTUAL BANK,** | § | |
| | § | |
| Defendant, | § | |
| **and** | § | |
| | § | |
| **FEDERAL DEPOSIT INSURANCE** | § | |
| **CORPORATION, AS RECEIVER FOR** | § | |
| **WASHINGTON MUTUAL BANK,** | § | |
| | § | |
| Intervenor. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff's Motion for Summary Judgment Against JPMC (Doc. 39), filed

July 15, 2011; the Federal Deposit Insurance Corporation's Motion to Dismiss Pursuant to Rule

12(b)(1) of the Federal Rules of Civil Procedure (Doc. 45), filed August 12, 2011; Intervenor,

Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank's Motion for

Summary Judgment (Doc. 48), filed August 12, 2011; Defendant JPMorgan Chase Bank, National

Association's Objections[1] and Motion to Exclude Certain Evidence in Support of Plaintiff's Motion

---

[1] Plaintiff also filed objections: Plaintiff's Objections to JPMC's and the FDIC's Attempt to "Incorporate" their Briefs in Support of Their Motions for Summary Judgment Which, in Turn, "Incorporate" the FDIC's Motion to Dismiss, in Their Responses to Plaintiff's Motion for Summary Judgment (Doc. 57), filed August 26, 2011; and Plaintiff's Objections to JPMC's Summary Judgment Evidence (Doc. 61 and 62), filed September 2, 2011. The court considers both parties' objections in ruling on their respective motions.

for Summary Judgment (Doc. 52), filed August 12, 2011; and Defendant JPMorgan Chase Bank, National Association's Motion for Summary Judgment (Doc. 53), filed August 12, 2011.

After careful review of the motions, briefs, record, evidence, and applicable law, the court **grants in part and denies in part** Plaintiff's Motion for Summary Judgment Against JPMC (Doc. 39); and **denies** the Federal Deposit Insurance Corporation's Motion to Dismiss Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (Doc. 45); Intervenor, Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank's Motion for Summary Judgment (Doc. 48); and Defendant JPMorgan Chase Bank, National Association's Motion for Summary Judgment (Doc. 53). The court **denies as moot** Defendant JPMorgan Chase Bank, National Association's Objections and Motion to Exclude Certain Evidence in Support of Plaintiff's Motion for Summary Judgment (Doc. 52), except to the extent certain of JPMC's objections are specifically overruled in this memorandum opinion and order.

## I.      Background

On June 27, 2008, Washington Mutual Bank ("WaMu") entered into a ground lease with Plaintiff Weichsel Farm Limited ("Weichsel" or "Plaintiff") for vacant property located at 3040 West Mockingbird Lane, Dallas, Texas (the "Lease"). Section 1.08 of the Lease provided that WaMu could "use the property for constructing, maintaining and operating its desired improvements . . . consisting of a building . . . together with a drive-through area, parking area, and appurtenant fixtures . . . ." Pl.'s App. 9.  Section 4.01 of the Lease included a "Feasibility Period Contingency that gave WaMu, as the tenant, 90 days to conduct a due diligence review and determine whether to proceed with the Lease. *Id*. at 14.  If WaMu confirmed it was satisfied or failed to provide written notice to

Weichsel within the Feasibility Period of its dissatisfaction, the contingency would be deemed satisfied, and WaMu would be obligated to pay rent under the Lease.

On September 22, 2008, WaMu confirmed that the Feasibility Period Contingency set forth in section 4.01 of the Lease had been satisfied and the Lease remained in effect.  Weichsel asserts that all Lease contingencies or conditions imposed on it as the landlord have been satisfied.  Shortly after confirming that the Feasibility Period Contingency had been satisfied, WaMu closed its doors and all of its assets and liabilities were transferred to the Federal Deposit Insurance Corporation ("FDIC"), as the receiver for WaMu, on September 25, 2008.

On the same day, the FDIC entered into a Purchase and Assumption Agreement ("PAA") with JPMorgan Chase Bank ("JPMC").[2]  Except for assets listed in schedule 3.5 of the PAA, JPMC purchased from the FDIC "all right, title, and interest of the Receiver in and to all of the assets (real, personal and mixed, wherever located and however acquired) . . . of the Failed Bank whether or not reflected in the books of the Failed Bank as of Bank Closing."  Pl.'s App. 72.  Schedule 3.5 excludes "leased Bank Premises," but JPMC had a 90 day option under the PAA to accept or decline to accept assignment of any leases for "leased Bank Premises, if any."  Property defined as "Other Real Estate" was automatically transferred to JPMC under the PAA.  *See* Pl.'s App. 101.

On December 22, 2008, JPMC notified Weichsel that it would not be assuming the Lease under the PAA.  On February 4, 2009, Weichsel wrote to JPMC, contending that it was liable for the Lease under the PAA.  By letter dated February 13, 2009, JPMC expressed its disagreement with Weichsel's interpretation of the PAA and denied any liability to Weichsel under the Lease.  JPMC

---

[2] Defendant JPMC and Intervenor FDIC are collectively referred to herein as "Defendants" unless otherwise specified.

further asserted that it did not believe Weichsel had standing under the PAA to raise these issues. On March 23, 2009, the FDIC notified Weichsel of its decision to disaffirm the Lease based on its conclusion that the Lease was burdensome and that disaffirmance would promote the orderly administration of WaMu's affairs.  On March 25, 2009, JPMC sent Weichsel a follow-up letter, confirming its election not to assume the Lease and notifying that it had vacated the leased premises as of January 22, 2009.

On April 13, 2009, Weichsel filed this action against JPMC for breach of the Lease, and the FDIC intervened. Weichsel asserts that all Lease contingencies or conditions imposed on it as the landlord have been satisfied.  Weichsel seeks $3,724,165 in damages under the Lease from JPMC for unpaid rent, property taxes, and interest.  It also seeks attorney's fees, costs, and prejudgment and postjudgment interest.

On March 18, 2010, JPMC moved to stay the proceedings pending resolution of an appeal in a related matter.  According to JPMC, *290 at 71, L.L.C. v. JPMorgan Chase Bank, National Association, Dana Fowlkes and Federal Deposit Insurance Corporation as Receiver for Washington Mutual Bank*, Case No. A-09-CA-576-SS, which was pending in the United States District Court for the Western District of Texas, involved a "virtually identical" liability issue, that is, whether the plaintiff had standing to enforce its own interpretation of the PAA.  Doc. 21.  JPMC therefore requested that the case be stayed, pending its and the FDIC's interlocutory appeal to the Fifth Circuit in *290 at 71, L.L.C. v. Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank; JP Morgan Chase Bank*, Case No. 10-00004.  *Id.*  Rather than stay the case, the court administratively closed the case pending resolution of the interlocutory appeal.

JPMC and the FDIC subsequently dismissed the appeal, and this case was reopened on December 29, 2010.  The FDIC moved to dismiss the action under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, and all parties moved for summary judgment.  In conjunction with their motions, the parties filed objections to evidence.

## II.    Applicable Legal Standards

### A.    Legal Standard – Rule 12(b)(1) Dismissal for Lack of Standing

The FDIC contends that subject matter jurisdiction is lacking because Weichsel does not have standing to enforce or even interpret the PAA, as required to bring this action.  Article III of the Constitution "confines the federal courts to adjudicating actual 'cases' and 'controversies.' " *Allen v. Wright*, 468 U.S. 737, 750 (1984).  To establish standing, a plaintiff must satisfy three elements:

> First, the plaintiff must have suffered an injury in fact   an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of   the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.  Third, it must be likely as opposed to merely speculative, that the injury will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations, quotation marks, and footnote omitted).  Because the question of standing implicates the court's subject matter jurisdiction, that is, the court's statutory or constitutional power to adjudicate a claim or dispute, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998), the court applies the standards for a motion to dismiss pursuant to Rule 12(b)(1).

*GE Capital Commercial Inc. v. Worthington Nat'l Bank*, No. 3:09-CV-572-L, 2011 WL 3156076, *3-4 (N.D. Tex. July 25, 2011).

A federal court has subject matter jurisdiction over cases "arising under" the Constitution, laws, or treaties of the United States, or in cases where the matter in controversy exceeds $75,000, exclusive of interest and costs, and diversity of citizenship exists between the parties.  28 U.S.C. §§

1331, 1332.   Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *See Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).   Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking.  *Id*.; *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)).   A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("federal court may raise subject matter jurisdiction sua sponte" ).

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate: (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir.), *cert. denied*, 534 U.S. 1127 (2002); *see also Ynclan v. Dep't of Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991).  Thus, unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court is entitled to consider disputed facts as well as undisputed facts in the record.  *See Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986).  All factual allegations of the complaint, however, must be accepted as true.  *Den Norske Stats Oljeselskap As*, 241 F.3d at 424.

### B.       Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Id.* (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III. Analysis

The court addresses the FDIC's motion to dismiss first under Rule 12(b)(1) and then considers whether Weichsel or Defendants are entitled to summary judgment.

### A. The FDIC's Rule 12(b)(1) Motion[3]

The FDIC's Rule 12(b)(1) motion is based on its contention that Weichsel lacks standing to sue. The FDIC further contends that even if Weichsel has standing, the case is moot because the court cannot provide Weichsel with any remedy.

---

[3] In deciding the FDIC's motion to dismiss, the court also considers the related jurisdictional arguments raised by the parties in their summary judgment briefing.

### 1.    Weichsel's Standing to Interpret and Enforce the PAA

According to the FDIC, because Weichsel is not a party or third-party beneficiary to the PAA, it lacks standing to interpret or enforce the PAA between JPMC and the FDIC.  The FDIC admits that Weichsel's only claim is for breach of the Lease but maintains that resolution of that claim necessarily turns on interpreting the PAA to determine whether it resulted in an outright assignment of the Lease to JPMC.  According to JPMC and the FDIC, because Weichsel lacks standing to enforce the terms of the PAA, it cannot rely on the PAA to establish the assignment to JPMC, and the court is likewise precluded from even reviewing the terms of the PAA.

Weichsel counters that its claim is with regard to the Lease, that is, it seeks to recover damages against JPMC under the Lease, not the PAA.  Weichsel therefore asserts that the Lease, not the PAA, serves as the basis for determining whether it has standing to pursue its breach of the Lease claim against JPMC.  Weichsel further contends that neither federal nor state law preclude it from looking to the PAA to establish that JPMC was assigned the lessee rights and duties of the Lease. Weichsel cites to a number of opinions by Texas district courts for support.

A plaintiff has standing to sue on a contract if it is a party to the contract or a third-party beneficiary.  *Resolution Trust Corp. v. Kemp*, 951 F.2d 657, 662 (5th Cir. 1992); *see also Dairyland Cnty. Mut. Ins. Co. v. Childress*, 650 S.W.2d 770, 775 (Tex. 1983).  Additionally, in the lessor-lessee context, "[o]ne who . . . acquires the entire leasehold estate becomes the tenant in place of the lessee and is in privity of estate with the lessor. An assignee is accordingly liable for the rent reserved in the lease and for the performance of covenants which run with the land." *Amco Trust, Inc. v. Naylor*, 317 S.W.2d 47, 50 (Tex. 1958).  Thus, a full assignment of a lessee's interest establishes privity of

estate between the assignee and the lessor and gives a plaintiff as lessor standing to sue for breach of the lease. *See id.*

As correctly noted by Weichsel, several district courts have addressed this precise issue and all have rejected similar arguments by the FDIC and JPMC. These courts have all concluded that a plaintiff in Weichsel's position should be able to rely on an assignment agreement like the PAA to establish standing via privity of estate on the lease at issue even though the plaintiff is not a party to the assignment agreement or a third party beneficiary. *See, e.g., Skillman Eastridge, Ltd. v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 3:09 CV 01988 M, 2011 WL 4528391 (N.D. Tex. Sept. 29, 2011) (Lynn, J.); *SR Partners Highway 26, LLC v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 3:10 CV 438 O (N.D. Tex. Sept. 2, 2011) (O'Connor, J.); *SR Partners Hulen, LLC v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 3:10 CV 437 B, 2011 WL 2923971 (N.D. Tex. July 21, 2011) (Boyle, J.); *290 at 71, L.L.C. v. JPMorgan Chase Bank, Nat'l Ass'n*, No. A-09-CA-576-SS, 2009 WL 3784347 (W.D. Tex. Nov. 9, 2009).[4] In reaching this conclusion, these courts have observed

---

[4] Defendants rely on *Eastbourne Arlington One, LP v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 4:10-CV-948-Y, 2011 WL 3165683 (N.D. Tex. July 27, 2011), in which the court reached the opposite conclusion based on *Old Stone Bank v. Fidelity Bank*, 749 F. Supp. 147 (N.D. Tex. 1990), and *Resolution Trust Corp.*, 951 F.2d 657. *Kemp* and *Old Stone* both held that "[u]nder Texas law, only actual parties to a contract or intended third-party beneficiaries can claim the benefit of a contract." *Id.* at 662; *Old Stone*, 749 F. Supp. at 153 (concluding that even if Old Stone had established standing under the PAA as a third-party beneficiary, "New Fidelity would [have been] entitled to judgment as a matter of law because New Fidelity never took an assignment of the [lease]"). On November 18, 2011, however, the *Eastbourne* court in an unpublished opinion reconsidered and vacated its July 27, 2011 order, and concluded that "when a plaintiff lessor is seeking to establish privity of estate, the plaintiff may offer a purported assignment agreement as proof that an assignment of the lease at issue occurred, even if the plaintiff is not a party or a third-party beneficiary to that assignment agreement." *Eastbourne*, No. 4:10-CV-948-Y, Doc. 49 at 6-7. In so holding, the court explained that its conclusion in this regard "does not disturb the well-settled rule [in *Kemp*] that one who is neither a party nor a third-party beneficiary to a contract may not enforce or claim the benefit of that contract" because:

> [a] plaintiff-lessor's offering of an assignment to establish privity of estate is not tantamount to "enforcing" or 'claiming the benefit' of that assignment agreement. The plaintiff-lessor,

that a rule prohibiting a plaintiff like Weichsel from relying on the PAA to establish privity of estate results in "a catch-22 that would keep [a plaintiff] from asserting its rights under the Lease against the new lessee even if a valid assignment of the Lease did occur." *290 at 71*, 2009 WL 3784347, at *4. The court therefore rejects Defendants' argument that Weichsel lacks standing to interpret or enforce the alleged assignment under the PAA because it is neither a party to the agreement nor a third-party beneficiary. To determine whether privity of estate exists in this case between Weichsel and JPMC, the court must interpret the PAA and determine whether the leased property constitutes Bank Premises or Other Real Estate. If, as Weichsel contends, the Lease constitutes "Other Real Estate" under the PAA, Weichsel and JPMC would be in privity of estate, and Weichsel would have standing to bring its breach of lease claim.

### 2.   Whether the Lease is "Other Real Estate" or "Bank Premises"

In construing a contract, the court must "ascertain and give effect to the parties' intentions as expressed in the document." *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005). The court considers "the entire writing and attempt[s] to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement."

---

instead, is seeking to enforce his own contract with the lessee-assignor, and his use of the assignment, to which he is not a party, is merely evidentiary to prove privity of estate with the assignee.

*Id.* at 7 (internal citations omitted). The court also reasoned that "this conclusion does not run afoul of *Old Stone*, as *Old Stone* involved slightly different facts and did not tackle the issue as currently framed." *Id.* The court therefore concludes that the July 27, 2011 *Eastbourne* opinion is no longer good law. Additionally, for the reasons set forth in the November 18, 2011 *Eastbourne* order, as well as the other cases cited herein that have addressed the issue, the court determines that the reasoning in *Kemp* and *Old Stone* does not apply, as both cases involve facts dissimilar from those in this case.

*Id.* at 312. The court construes the contract "from a utilitarian standpoint bearing in mind the particular business activity sought to be served" and should avoid, when possible and proper, a construction that is "unreasonable, inequitable, and oppressive." *Id.* A contract should be construed according to its plain meaning unless the contract itself shows the parties intended a different meaning. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

It is well settled that if a contract is unambiguous, construction of the contract is done as a matter of law, and extrinsic evidence of the intentions of the parties is not admissible to ascertain the meaning of an unambiguous agreement. *See National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). A contract is unambiguous if it can be given a definite or certain legal meaning. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). "A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation." *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). "A contract is not ambiguous simply because the parties disagree over its meaning." *Id.*

The PAA defines "Bank Premises" as:

> the banking houses, drive-in banking facilities, and teller facilities (staffed or automated) together with appurtenant parking, storage and service facilities and structures connecting remote facilities to banking houses, and land on which the foregoing are located, that are owned or leased by [WaMu] and that are occupied by [WaMu] as of Bank Closing.

FDIC Mot. to Dismiss App. 65. It is undisputed that JPMC had the option under the PAA to assume or decline any WaMu lease of property that qualified as "Bank Premises." It is likewise undisputed that property classified as "Other Real Estate" under the PAA was automatically assumed by JPMC. The PAA defines "Other Real Estate" as "all interests in real estate (other than Bank Premisses and

Fixtures), including but not limited to mineral rights, leasehold rights, condominium rights and cooperative interests, air rights and development rights that are owned by the Failed Bank." *Id*. at 69.

Weichsel alleges in its Complaint that "[a]t the time of WaMu's closing, the tract of land leased from Plaintiff by WaMu consisted of a vacant, undeveloped lot." Pl.'s Compl. 3. In support of its summary judgment motion, Weichsel submitted the affidavit of Weichsel general manager John R. Sears ("Sears"), who similarly states: "the property at issue was, and remains, a vacant lot. A 'banking house, drive-in banking facility, teller facility, appurtenant parking, storage and service facility or structure' have never been located on the Leased Property." Pl.'s Mot. App. 3, ¶ 7. Because the property was and is vacant and does not contain any of the aforementioned structures listed in the PAA's definition of "Bank Premises," Weichsel contends that the Lease and leased lot do not constitute "Bank Premises" and instead fall into the "Other Real Estate" category that was automatically assumed by JPMC under the PAA.

JPMC, on the other hand, contends that the Lease is a "Bank Premise," and JPMC exercised its option under the PAA within 90 days to not assume the Lease. The FDIC similarly contends that the Lease is "Bank Premises" that was not assumed by JPMC and instead remained with the FDIC until the FDIC exercised its right as receiver to disaffirm the Lease. The FDIC and JPMC argue that land held for a future branch bank qualifies as "Bank Premises" under the PAA and submitted evidence of the their intentions in that regard.

The FDIC presented evidence in the form of affidavit testimony to support Defendants' position that the Lease is "Bank Premises." Robert C. Schoppe states in his affidavit: "The WaMu lease is subject to the provisions of Section 4.6 of the PAA [because it] involves property that WaMu

contracted for and intended to use for banking operations (and is considered to be 'occupied' by the FDIC as the Receiver)."  FDIC Mot. SJ App. 51.  Herbert J. Held ("Held") similarly states in his affidavit that the Lease "specifically defined the 'use' of the property to be for the operation of a bank, was the type of lease that the FDIC considers to be a lease for Bank Premises within the meaning of those terms as set out in the [PAA]."  FDIC Mot. SJ App. 2, ¶ 5.  Held goes on to state: "The FDIC considers any property that WaMu used for banking operations or to which it had contracted for and intended to use for banking operations at the time of its closing to be included under the definition of Bank Premises under Section 4.6 of the [PAA]."  *Id.* ¶ 6.

Based on the declaration of Bryan Brown ("Brown"), JPMC's vice president and director of real estate, JPMC contends that the Lease qualifies as "Bank Premises" because WaMu "occupied" the leased property "by holding, possessing, and keeping the property for use as part of WaMu's banking operations."  JPMC Mot. App. 128-29, ¶ 12.  JPMC further asserts, based on Brown's declaration and Black's Law Dictionary's definition of "occupy," that the Lease "was and is considered to be 'occupied' by JPMC because WaMu held and possessed the property as a tenant." *Id.*; *see also* JPMC Mot. 14-15.

JPMC and Weichsel object to the other's summary judgment evidence.  JPMC objects to the statement in paragraph 7 of Sears's affidavit on the grounds it that is an improper legal conclusion and otherwise inadmissible.  Weichsel contends, among other things, that the evidence referred to above is parol evidence and not admissible to contradict the unambiguous language of the PAA. JPMC responds that the evidence does not vary or contradict the PAA but instead "elucidates the commercial context of the PAA" and "further explains the technical meanings of 'Bank Premises' and 'Other Real Estate' in the FDIC transactions."  JPMC Reply 7-8 (Doc. 66).

The court determines that the PAA is unambiguous as a matter of law since its provisions are clear and not susceptible to more than one reasonable interpretation. Based on the unambiguous language of the PAA, Weichsel's allegations,[5] and the testimony of Sears that the leased property was vacant at the time WaMu closed its doors, the court determines that the Lease is "Other Real Estate" and was automatically transferred under the PAA to JPMC in September 2008. This interpretation is consistent with the PAA and the interpretation of other district courts that have examined identical language in PAAs between JPMC and the FDIC. *See, e.g.*, *Skillman Eastridge, Ltd.*, 2011 WL 4528391, at *5-7; *SR Partners Hulen, LLC*, 2011 WL 2923971, at *5-8 (following Judge Spark's reasoning in *290 at 71*, and citing or discussing other cases that have similarly held that vacant leased property does not constitute "Bank Premises" under the PAA).[6]

---

[5] The court accepts as true the factual allegation in Weichsel's Complaint that the leased property was vacant at the time of WaMu's closing. *Den Norske Stats Oljeselskap As*, 241 F.3d at 424. JPMC objects to Sears's affidavit testimony regarding the vacant nature of the property and contends that the testimony:

> purports to state a legal conclusion, purports to interpret a contract to which neither Mr. Sears nor Plaintiff is a party or third-party beneficiary and therefore they have no standing to interpret it, is irrelevant, improper lay testimony, improper expert testimony, unduly prejudicial, conclusory, speculative, assumes facts not in evidence and is made without any foundation or personal knowledge. This statement should be excluded under Federal Rules of Evidence 402, 403, 601, 701, 702, because it states a legal conclusion, is conclusory and speculative.

JPMC's Mot. to Exclude 3, ¶ 4. The court disagrees and **overrules** the objection. Mr. Sears states in his affidavit that he is the general manager of Weichsel responsible for the company's day-to-day operations, and he is familiar with the Lease and property that is the subject of the Lease. The court therefore determines that he has sufficient personal knowledge to testify that the property was and remains a vacant lot. His testimony in this regard is not a legal conclusion, conclusory, speculative, or otherwise inadmissible for the boiler plate reasons urged by JPMC. Moreover, JPMC has not come forward with any admissible testimony or evidence to challenge Sears's factual statement regarding the vacant nature of the property.

[6] In *290 at 71*, Judge Sparks determined that the PAA was "unambiguous as a matter of law" and that the vacant land in question, although leased for a future bank, was not "Bank Premises" as defined by the PAA. *Id*. at *5. In reaching this conclusion, he reasoned that the PAA would be "absolutely meaningless" if the FDIC and JPMC "could determine between themselves . . . what property is 'Bank Premises' . . . notwithstanding the express definition of the PAA." *290 at 71, LLC*, at *7 n.5. He therefore held that the

Moreover, JPMC's and the FDIC's interpretation of "Bank Premises" focuses on the term "occupied" but completely ignores the rest of the definition.  In rejecting a similar argument by JPMC and the FDIC, the court in *Skillman  Eastridge* concluded:

> The term "occupied" in the definition of Bank Premises does not refer simply to the land under the lease   it refers only to land in the context of the enumerated structures actually being present ("land on which the foregoing are located"). . . .a proper reading of the PAA requires WaMu not only to have taken possession of the land, but also for at least one of the structures described in the PAA's definition of Bank Premises to be substantially completed when WAMU closed.

*Skillman  Eastridge, Ltd.*, 2011 WL 4528391, at *7.  Likewise, the court in *SR Partners Hulen, LLC* focused on the language "'land on which the foregoing are located' in the definition of 'Bank Premises,' where 'foregoing' refers to 'banking houses, drive-in facilities and teller facilities.'"  *SR Partners Hulen, LLC*, 2011 WL 2923971, at *8.  Following the reasoning in *Excel Willowbrook, LLC v. JP Morgan Chase Bank*, No. 4:09  CV  2988 (S.D. Tex. July 11, 2011), the court agreed that since the verb "are" is in the present tense, such structures had to be present or constructed as of the date of the bank's closing and the execution of the PAA.  *Id*.  Thus, in order to qualify as "Bank Premises," "one or more of the 'foregoing' structures must be physically on the land, and WaMu must have physically occupied those facilities on the date of closing."  *Id*. (quoting *Excel Willowbrook, LLC*, at 11).

The *SR Partners Hulen, LLC* court therefore concluded that "[t]here was no question in that case, nor is there in the instant case, that no structure was on the land at the time of the signing of the PAA.  Thus, the lease in the cases constitutes 'Other Real Estate' under the PAA."  *Id*.  The court

---

FDIC assigned the lease to JPMC under the PAA, and that the plaintiff-lessor had standing to assert a breach of lease claim against JPMC.  *Id*. at *5.  The court finds Judge Sparks's reasoning quite logical and persuasive.

further reasoned that "the definition of 'Other Real Estate' unambiguously includes 'leasehold rights' [and] [w]hile that language does not preclude a lease from constituting 'Bank Premises' (which is allowed within the definition of 'Bank Premises'   'land . . . owned or leased'), its inclusion in the definition does demonstrate that certain leases do constitute 'Other Real Estate.'" *Id.* at *8 n.11.

Following the reasoning of these courts, this court concludes that because the leased property was vacant at the time of WaMu's closing, the Lease is "Other Real Estate," and as a result, Weichsel is in privity of estate with JPMC and has standing to bring the present suit.  The court therefore has jurisdiction over the dispute and determines that the FDIC's Rule 12(b)(1) motion should be denied unless the assignment of the Lease was void as the FDIC contends.

### 3.      Whether the Assignment of the Lease is Void

The FDIC contends that even if Weichsel has standing under the PAA, its claim for breach of the Lease against JPMC still fails, because any assignment of the Lease is void under 12 U.S.C. § 29, since according to the FDIC, JPMC never intended to use the property covered by the Lease for the transaction of its business.  The FDIC therefore contends that the case is moot and the court cannot provide Weichsel with any remedy.

Weichsel counters that the Lease was assigned outright to JPMC under the PAA as "Other Real Estate" rather than "Bank Premises" as contended by JPMC, and as a result, JPMC did not have the option under the PAA to decline to take or reject the Lease assignment.  Pl.'s Mot. 3.  Weichsel further contends that JPMC's decision not to develop the leasehold property after taking the assignment of the Lease under the PAA did not cause the prior assignment to violate 12 U.S.C. § 29, because, if this were the case, a national bank could enter into a valid real property lease and then void the contract by merely changing its mind afterwards about whether to develop the property.

Weichsel contends, based on *First National Bank of Bellaire v. Comptroller of Currency*, 697 F.2d 674 (5th Cir. 1983), that section 29 did not void the Lease but instead required JPMC to sell, transfer or otherwise dispose of the Lease once it decided not to develop the leasehold in the transaction of its business. The court agrees.

The FDIC relies on *Houston v. Drake*, 97 F. 2d 863 (9th Cir. 1938), in which the court held that a landlord could not recover on a lease that had been assumed by a bank in violation of section 29. *See id.* at 867 ("As the lease is void because ultra vires of the [ assuming bank], there can be no recovery on the lease by [ the landlord], and the decree must declare the lease to be void."). The court concluded that the assumption of the lease violated section 29 because the assuming bank did not intend to use the premises in the transaction of its business when it assumed the lease, and instead acquired the lease "because it was considered 'good business' and because it was thought that a profit could be made by sub-leasing the premises." *Id.* at 865.

Although not binding precedent, the court determines that the facts in the present case are more analogous to the Ninth Circuit's later opinion in *Frank v. Giesy*, 117 F.2d 122 (9th Cir.1941), where it distinguished its holding in *Houston* and rejected an argument similar to that urged by the FDIC. *See id.* at 125-26. In holding that the landlord was entitled to recover all rents, taxes and insurance premiums that had accrued under the lease, the *Frank* court distinguished *Houston* based on the nature of the banks' consolidation in *Frank* in which the assets and liabilities of one bank were vested in their entirety in another bank without any prior negotiation between the landlord and original lessor. *Id.* Additionally, unlike *Houston*, the acquiring bank in *Frank* did not assume the lease for the purpose of speculating in real estate. Instead, the lease was automatically assumed as part of a larger transaction. *Id.*

**Memorandum Opinion and Order   Page 18**

In a case factually similar to the present one, the court in *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat. Ass'n*, No. 10-CV-1772 JG-SMG, 2011 WL 5008368 (E.D.N.Y. Oct. 20, 2011), determined that a WaMu lease (that was held by WaMu to be used as banking premises) was more like the transaction in *Frank* than *Houston* because the lease was automatically transferred to or assumed by JPMC under a PAA between JPMC and the FDIC and not assumed as a result of prior negotiations between the landlord and original lessor. *Id*. at 14.  In addition, the lease was not assumed by JPMC for the purpose of speculating in real estate. *Id*.  The court therefore concluded that the assumption was not a deliberately acquired asset in violation of 12 U.S.C. § 29. *Id*.  Based on the reasoning in *First National Bank of Bellaire v. Comptroller of Currency*, 697 F.2d 674, 682 (5th Cir. 1983), the court further concluded that if the WaMu lease was automatically assumed by JPMC under the PAA, JPMC "may be under an obligation to divest itself of the property within a reasonable time, but the lease is not void, and Hillside [as the landlord] may recover against [JPMC]." *Hillside Metro Assocs., LLC*, 2011 WL 5008368, at *14.

The court agrees with the reasoning in *Hillside Metro Associates, LLC*.  Having already determined that the Lease in this case was automatically transferred to JPMC as "Other Real Estate" under the PAA, the court concludes that the Lease is more akin to the transaction in *Frank* than *Houston*.  Accordingly, the Lease is not void, and Weichsel may recover against JPMC for breach of the Lease. *See id.*  The court therefore has subject matter jurisdiction over the action and **denies** FDIC's Rule 12(b)(1) motion.

### B. Defendants' Motions for Summary Judgment

The court's determination regarding the FDIC's Rule 12(b)(1) motion largely resolves the issues presented in the parties' summary judgment motions.[7]  Because the court finds that Plaintiff has standing to enforce the unambiguous PAA's classification of the lease as "Other Real Estate," JPMC and the FDIC's motions for summary judgment will be **denied**. Because the PAA is unambiguous, the court does not consider JPMC and the FDIC's parol evidence of their extra-contractual intent to treat the Lease as "Bank Premises."  *See Balandran v. SafeCo Ins. Co.*, 972 S.W.2d 738, 741 (Tex. 1998).

Unlike the factual assertions by Weichsel regarding the vacant status of the leased property and the nonexistence of any structures on the property as referred to in the definition of "Bank Premises," JPMC's and the FDIC's proffered testimony and evidence is extrinsic evidence of the parties' intentions regarding the meaning of "Bank Premises" and the term "occupied" as that word is used in the definition of "Bank Premises" and, consequently, is not admissible to ascertain the meaning of the otherwise unambiguous Lease.  The declaration testimony submitted by JPMC and the FDIC is more akin to an explanation or attempt to put a spin on the meaning of these terms  that contradicts and is not supported by the plain language of the PAA.  For these reasons, Defendants are not entitled to summary judgment.

---

[7] In addition to the issues already addressed, JPMC contends in its summary judgment motion that Weichsel's breach of lease claim is an improper attempt to circumvent the statutory scheme of the Financial Institutions Reform Recovery and Enforcement Act of 1989 ("FIRREA"), because Weichsel is injecting itself into the PAA to enforce an interpretation of the PAA that is contrary to JPMC's and the FDIC's intentions. JPMC fails to point to anything in the FIRREA that requires the court to set aside Texas assignment law. Moreover, while the FIRREA establishes a comprehensive and detailed statutory scheme for the resolution of a failed bank's assets and liabilities, the Supreme Court has made clear that "matters left unaddressed in such a scheme are presumably left subject to the disposition provided by state law." *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 85 (1994).  Accordingly, this argument by JPMC does not affect the court's ruling on the parties' motions.

### C.      Plaintiff's Motion for Summary Judgment

Having determined that the Lease was transferred to JPMC as "Other Real Estate" and Weichsel has standing to bring a claim against JPMC for breach of the Lease, the court addresses whether Weichsel is entitled to summary judgment on its claim against JPMC for breach of the Lease. JPMC contends that Weichsel is not entitled to summary judgment because the evidence does not establish that JPMC breached or repudiated the Lease, and Weichsel's evidence on damages is insufficient or inadmissible.  According to JPMC, "[i]t is undisputed that the FDIC    not JPMC repudiated the WaMu Lease" when it disaffirmed the Lease.  JPMC's Resp. 10.

Regarding damages, JPMC asserts that additional discovery is needed to address Weichsel's efforts to mitigate its damages.  JPMC further contends that Weichsel's affidavit testimony on damages includes unsupported assumptions on the discount rate and methodology that are not explained or tested.  For example, JPMC contends Weichsel's affidavit testimony does not explain whether any costs to Weichsel have been accounted for and subtracted from the amount claimed to be due and owing.  For support, that it may be entitled to net profit rather than gross profits, JPMC cites *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 n.1 (Tex. 1992).  JPMC also cites *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293 (Tex. 1997), for the proposition that Texas law requires the nonbreaching party to follow certain guidelines in calculating damages for breach of a commercial lease that JPMC contends were not adhered to by Weichsel.

To recover on its breach of lease claim, Weichsel must show (1) the existence of a lease; (2) its compliance with the terms of the lease; (3) breach of the lease by JPMC; and (4) damages sustained as a result of the breach.  *See McGraw v. Brown Realty Co.*, 195 S.W.3d 271, 276 (Tex. App.    Dallas 2006, no pet.); *Bieganowski v. El Paso Med. Ctr. Joint Venture*, 848 S.W.2d 361, 362

(Tex. App.    El Paso 1993, writ denied).  Weichsel has produced evidence to establish the existence of the Lease with WaMu, the assignment of that lease to JPMC under the PAA, and its performance under the Lease.[8]  Thus, the only issues remaining are whether Weichsel has come forward with sufficient evidence in support of its summary judgment motion regarding JPMC's breach and its damages.  Also remaining is JPMC's objection regarding Weichsel's alleged failure to mitigate its damages.

Regarding JPMC's breach, Weichsel maintains that Sears's affidavit testimony that JPMC failed to make any payments under the lease, is sufficient evidence that JPMC breached the Lease.  Weichsel also points to JPMC's February 13, 2009 and March 25, 2009 letters as evidence that JPMC repudiated and breached its obligations under the Lease.  JPMC objects to these letters as "irrelevant and unduly prejudicial" under Rules 402 and 403 of the Federal Rules of Evidence.  JPMC Mot. to Exclude 5, ¶ 9.  The court determines that these letters are relevant to the issue of whether JPMC breached or repudiated the Lease and admissible as admissions against interest by JPMC.  *See* Fed. R. Evid. 801(d)(2).  Moreover, Sears's uncontested testimony that JPMC failed to make any payments under the Lease is sufficient alone to establish that JPMC materially breached the Lease.  The court therefore **overrules** JPMC's objection on this ground.

---

[8] JPMC objects to Sears's affidavit testimony regarding Weichsel's performance of its obligations under the Lease.  Specifically, JPMC objects to paragraph 4 of Sears's affidavit and testimony that "all of the Landlord's obligations contained in the Ground Lease had been satisfied by Landlord."  JPMC Mot. to Exclude, 2, ¶ 2.  JPMC contends that this testimony purports to interpret a September 22, 2008 letter that is the best evidence of its contents, and the testimony is an improper legal conclusion, irrelevant, conclusory, speculative, improper lay testimony, and improper expert testimony in violation of Federal Rules of Evidence 402, 701, 702, 802, and 1002.  With or without the letter, the court concludes that Sears's testimony regarding Weichsel's performance under the Lease is admissible and sufficient to satisfy its burden as the summary judgment movant, and JPMC has not come forward with other evidence to controvert Sears's testimony in this regard.  The court therefore **overrules** JPMC's objection on this ground.

Regarding damages, Weichsel maintains that Sears's affidavit is sufficient to establish its damages under the Lease caused by JPMC's breach and repudiation. Weichsel contends that *Austin Hill Country Realty, Inc.* does not support JPMC's argument regarding adherence to guidelines for calculating damages and instead deals only with the issue of mitigation and places the burden on the tenant to come forward with evidence of the landlord's failure to mitigate damages. Weichsel further asserts that even if it was required to come forward with mitigation evidence, Sears's affidavit states that "Weichsel Farm has not been able to re-lease the Leased Property despite diligent efforts to do so." Pl.'s Reply 7, ¶ 14 and App. 4, ¶ 11. Weichsel does not directly address JPMC's argument regarding Sears's present value calculation except to state that "Sears has calculated the present value of the future payments as being $2,997,914."

### 1.    JPMC's Failure to Mitigate Objection

Under Texas law, when a landlord treats a breach of a lease as a repudiation of the lease and reenters the premises, or when the tenant abandons the property, the landlord has a duty to mitigate the lost rents through "objectively reasonable efforts to fill the premises when the tenant vacates in breach of the lease." *Austin Hill Country Realty v. Palisades Plaza*, 948 S.W.2d 293, 299 (Tex. 1997), *abrogated in part* by Tex. Prop. Code Ann. § 91.006; *see also* Tex. Prop. Code Ann. § 91.006 (West 2007). The proper of measure of damages for future rent is the rent payments that would have been paid under the lease, reduced to present value, and further reduced by the amount the landlord received or could have received through mitigation. *See Cash Am. Int'l v. Hampton Place*, 955 S.W.2d 459, 462 (Tex. App.    Fort Worth 1997, pet. denied). The landlord's failure to mitigate is an affirmative defense. *Id.* at 462. As such, the tenant bears the burden to show that the landlord

failed to mitigate its damages and the amount by which it could have reduced its damages through mitigation. *Austin Hill Country Realty*, 948 S.W.2d at 300.

While JPMC alleged a failure to mitigate damages in its response to Weichsel's summary judgment motion, it did not submit any summary judgment evidence in support of its affirmative defense and instead maintained that discovery on this issue is necessary. JPMC, however, submitted no affidavit or declaration that sets forth specific reasons why it cannot present facts to justify its position on the mitigation of damages issue as required by Rule 56(d). *See* Fed. R. Civ. P. 56(d). In the absence of summary judgment evidence on Weichsel's alleged failure to mitigate, the court concludes that there is no genuine dispute as to any material fact and **overrules** JPMC's objection.

### 2.    Weichsel's Evidence of Damages

Weichsel's only evidence of damages appears in paragraph 11 of Sears's affidavit in which Sears states:

> The accrued and unpaid lease payments total $643,222.13 as of July 14, 2011. In addition, the Ground Lease calls for the payment of property taxes. The unpaid and accrued property taxes as of July 14, 2011 are $39,853.04. The Ground Lease requires the Lessee to pay interest at the per annum rate of 5.25% on all due and unpaid amounts. As of July 14, 2011, accrued interest totals $43,175.69. Interest continues to accrue on all due and unpaid amounts under the Ground Lease at the per annum rate specified in the Ground Lease. Using a six percent (6%) discount factor, the present value of the rent payment which will accrue under the Ground Lease after July 14, 2011 is $2,997,914.00. Such amount does not include property taxes. It is my opinion that a six percent (6%) discount is the appropriate discount rate to apply in calculating the present value of the future rent payments called for by the Ground Lease.

Pl.'s App. 4, ¶ 11. "[Exact damages figures for breaches of high dollar commercial contracts are rarely possible and are not required." *Bayer Corp. v. DX Terminals, Ltd.*, 214 S.W.3d 586, 609 (Tex. App. Houston [14th Dist.] 2006, pet. denied.). The court concludes that Sears's testimony regarding unpaid rent, property taxes, and interest as of July 14, 2011, are sufficiently specific. As

the person in charge of Weichsel's day-to-day operations, the court determines that Sears has sufficient personal knowledge to make these simple calculations based on the terms of the Lease.

There appears to be a discrepancy, however, between the total amount of damages claimed by Weichsel. The amount of damages set forth in Sears's affidavit, including the amounts due under the Lease after July 14, 2011, total $3,655,164.86, whereas Weichsel's motion for summary judgment seeks at total of $3,724,165 in damages under the Lease from JPMC for unpaid rent, property taxes, and interest. Moreover, it is unclear from the affidavit whether Sears is sufficiently qualified to opine that "a six percent (6%) discount is the appropriate discount rate to apply in calculating the present value of the future rent payments called for by the Ground Lease," and Sears does not state the basis for his opinion in this regard. Pl.'s App. 4, ¶ 11. Thus, while Weichsel has satisfied the other requirements for its breach of lease claim, the court will need additional information to address these issues regarding damages. The court therefore **grants in part and denies in part** Plaintiff's Motion for Summary Judgment Against JPMC in that the motion is granted as to liability but denied as to the amount of damages sought by Weichsel.

### D.    Objections by the Parties

The parties' asserted a number of objections to evidence submitted, including objections to affidavit and declaration testimony. Weichsel also objected to JPMC's and the FDIC's incorporating other briefing in support of their summary judgment motions. To the extent not already addressed herein, the objections are **overruled as moot** since the court only considered and relied on evidence admissible pursuant to Rule 56 of the Federal Rules of Civil Procedure and the standards enunciated for Rule 12(b)(1) and summary judgment practice. Additionally, the court considered all of the parties' briefing and Weichsel did not move for leave to exceed the page limitations under the

court's local rules to further address the arguments raised by Defendants that were incorporated in their summary judgment motions.

## IV.   Conclusion

For the reasons stated herein,  the court **denies**  the Federal Deposit Insurance Corporation's Motion to Dismiss Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (Doc. 45); Intervenor, Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank's Motion for Summary Judgment (Doc. 48); and Defendant JPMorgan Chase Bank, National Association's Motion for Summary Judgment (Doc. 53).  The court also **denies as moot** Defendant JPMorgan Chase Bank, National Association's Objections and Motion to Exclude Certain Evidence in Support of Plaintiff's Motion for Summary Judgment (Doc. 52), except to the extent the court specifically addressed and overruled certain  objections by JPMC in this memorandum opinion and order.  The court **grants in part and denies in part** Plaintiff's Motion for Summary Judgment Against JPMC (Doc. 39) in that the motion is granted as to liability but denied as to the amount of damages sought by Weichsel.

Based on the court's ruling, the amount of damages is all that remains to be tried.  The court strongly urges the parties to attempt to resolve this matter without the necessity of going to trial.  If the action is not resolved, the parties must inform the court by **April 13, 2012**, whether they intend to pursue settlement negotiations.  The parties are advised that Magistrate Judge Paul D. Stickney remains available to mediate this matter.  If the parties desire Magistrate Judge Stickney to mediate, they must inform the court by **April 13, 2012.**

**It is so ordered** this 28th day of March, 2012.

Sam A. Lindsay
United States District Judge